# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned On Briefs November 6, 2012

## STATE OF TENNESSEE v. TYRONE DOUGLAS

**Appeal from the Criminal Court for Davidson County**
**No. 2009-D-3338    Steve Dozier, Judge**

---

**No.  M2012-00728-CCA-R3-CD Filed December 3, 2012**

---

Appellant, Tyrone Douglas, was placed on community corrections after his plea of guilty to the sale of less than .5 gram of cocaine in Davidson County.  After the trial court found a violation of community corrections in 2011, Appellant was reinstated to community corrections on the condition that he complete a drug and mental health assessment and comply with any recommendations made in the assessment.  Subsequently, another affidavit was filed alleging Appellant had violated the terms of his community corrections sentence by failing to attend required meetings with his case worker and pleading guilty to new charges.  The trial court revoked Appellant's community corrections sentence, reinstating Appellant's sentence of thirteen years, to be served as a Persistent Offender at forty-five percent incarceration.  Appellant appeals that revocation.  After a review of the record, we determine that the trial court did not abuse it's discretion. Therefore, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Jeffrey A. DeVasher, Assistant Public Defender, (on appeal), and Kevin J. Griffith, Assistant Public Defender, (at trial), Nashville, Tennessee, for the appellant, Tyrone Douglas.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

Appellant was indicted by the Davidson County Grand Jury in October of 2009 for the sale of less than .5 grams of cocaine. Appellant pled guilty. At the guilty plea hearing, the State claimed that, had the case gone to trial:

> [T]he State's proof would have shown that on August 8, 2009, at approximately 2:15 in the afternoon, [a] Metro officer was working under cover in an unmarked vehicle accompanied by two confidential informants. The informants had been searched prior to the incident and were found to be free of contraband and drugs. One of the informants contacted a subject identified as Tyrone Mac Douglas, at 615-586-2963 and inquired about the purchase of some crack. The subject directed the informant and officer to meet with him in front of the Executive Inn located at 970 Murfreesboro Pike. Once the officer arrived at the location, the defendant insisted on getting into the vehicle to make the sale. The defendant got into the car and instructed them to drive inbound on Murfreesboro Pike and drop him off at the Discount Tobacco located at 419 Murfreesboro Pike. While on the way to that location, the defendant handed the officer a rock-like substance wrapped in paper in exchange for 30 dollars that had been previously photographs.
>
> > The officer let the defendant out of the vehicle at 419 Murfreesboro Pike, takedown officers were notified and the defendant was arrested in the parking lot. The 30 dollars worth of buy money was recovered from his front pocket. The substance was verified by the TBI to be cocaine-based substance and weighed .1 gram.

In exchange for the guilty plea, Appellant was sentenced as a Range IV, Persistent Offender to thirteen years in incarceration at forty-five percent. The trial court ordered Appellant to serve the sentence on Community Corrections and assessed a $2,000 fine. The judgment form listed the following special conditions: "[d]rug and alcohol assessment, treatment and screens, mental health assessment. Defendant to serve 45 days (3-11-11 to 4-25-11). If defendant violates, agrees to serve at least split confinement of one year."

On January 4, 2012, an affidavit was filed alleging Appellant had violated the terms of his community corrections sentence. Specifically, Appellant's case officer alleged:

Violation of Rule #4 which states the offender will accept any clinical supervision, treatment, or program determined by the Court Services Center, in that; [Appellant] was ordered to attend the Intensive Outpatient Program with Elam. [Appellant] was discharged from this program on December 22, 2011.

Violation of Rule #18 which states the offender will pay Court costs/fines in the minimum amount of $10.00 per month, in that; [appellant] has failed to make any payments since being placed on the program . . . .

Violation of rule #19 which states the offender will pay a Community Corrections supervision fee of $15.00 per month and a State fee of $30.00 per month for each month of supervision with the DCCCP, in that; [Appellant] has not made any payments since being placed on the program . . . .

Violation of Rule #21 which states the offender will perform 16 hours of community service work per month until 240 hours are completed, in that; [Appellant] has failed to perform any community service work hours since being placed on the program . . . .

The affidavit was amended twice to reflect multiple rule violations, including failing to attend an appointment with his case worker and pleading guilty to possession of a controlled substance.

The trial court held a hearing on the violation. At the hearing, Appellant's case officer, Brandi Jimerson, testified that Appellant was initially on "regular community corrections" prior to being transferred to the "mental health program" after his first violation. Ms. Jimerson testified that she knew of nothing Appellant had done to comply with the conditions of his community corrections sentence. Ms. Jimerson testified that Appellant absconded from supervision, failed to complete the outpatient treatment, failed to pay supervision fees and fines, and failed to complete any community service. Additionally, Appellant had failed to report to scheduled appointments on two separate occasions, also, Ms. Jimerson could not reach Appellant at the halfway house, a location in which he had been placed.

Appellant testified that he was shot on December 4, 2011 and was placed in the hospital for several days. Appellant was then placed in an intensive outpatient program at Elam. He was discharged from the intensive outpatient program for failing to comply with the requirements of the program. He was taking Lortab, a pain medication, which was prohibited. Additionally, he cursed and disrupted his group sessions. Despite taking the medication, Appellant did not fail a drug screen. Ms. Jimerson was unaware of Appellant's use of prescription pain medication.

Appellant was then placed in a halfway house. Appellant was removed from the halfway house because he could not pay his rent. Ms. Jimerson continually tried to work with Appellant to get him into a different recovery house. Appellant admitted he disappeared for a bit, and resurfaced when he was arrested for possession of a controlled substance. He also conceded that he failed to perform community service and failed to obtain employment while awaiting a decision on his disability.

Appellant testified that he could not blame anyone for his actions. He explained that he had to leave inpatient treatment because he could not pay. However, Appellant admitted that he lied at the halfway house and was on crack cocaine at the time he was there. Appellant explained that he "just snapped" and was kicked out of treatment. Further, Appellant admitted that he had previously tested positive for drugs while on supervision, was taking Lortab to treat the pain from his gunshot, and that he was also taking this medication during the time he was being supervised.

Appellant admitted that he started using drugs again while being supervised by Ms. Jimerson. He admitted that he did not show up for his appointments because he was in the hospital. He claimed that he did not know that he had to report again after leaving the halfway house but admitted that he was using drugs again. Appellant also admitted that he was arrested and pled guilty to new charges while on community corrections.

Appellant confessed that he needed help and expressed frustration over his inability to get it "right." He acknowledged that he has eleven prior probation and community correction violations. Additionally, Appellant admitted that he could recall at least twelve other occasions on which he was supposed to come to court or get booked on a crime but failed to do so.

At the conclusion of the hearing, the trial court revoked Appellant's community corrections sentence and ordered him to serve his original sentence, thirteen years, in confinement. Appellant appeals this decision.

*Analysis*

On appeal, Appellant argues that the trial court erred in ordering Appellant to serve his entire thirteen-year sentence in incarceration. Specifically, Appellant argues that his actions "indicate a series of missteps occasioned by mental illness, drug addiction, poverty, and misfortune" and that the trial court's decision did not "serve the ends of justice and is not in the best interest of either the public of [Appellant]."

The Community Corrections Act of 1985 was designed to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." T.C.A. § 40-36-103(1). The community corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant and serve legitimate societal aims. *State v. Griffith*, 787 S.W.2d 340, 342 (Tenn. 1990). Even in cases where the defendant meets the minimum requirements, however, the defendant is not necessarily entitled to a community corrections sentence as a matter of law or right. *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

Once a defendant violates the terms of his community corrections program, the trial court may revoke the sentence and impose a new one:

> The court shall also possess the power to revoke the sentence imposed at any time due to the conduct of the defendant or the termination or modification of the program to which the defendant has been sentenced, and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in the community-based alternative to incarceration.

T.C.A. § 40-36-106(e)(4). In other words, the trial court may conduct a sentencing hearing and may impose a greater sentence than the original sentence. *Griffith*, 787 S.W.2d at 342; *State v. Cooper*, 977 S.W.2d 130, 132 (Tenn. Crim. App. 1998).

In *State v. Harkins*, 811 S.W.2d 79 (Tenn. 1991), our supreme court ruled that a community corrections sentence is so similar to a probationary sentence as to require the application of the same standard of review. Our general law provides that a trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. T.C.A. § 40-35-311(e); *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). On appeal, a revocation will be upheld absent an abuse of discretion. In order to establish that the trial court has abused its discretion, the defendant must show that there is no substantial evidence to support the determination that he violated the terms of his sentence. *Harkins*, 811 S.W.2d at 82 (citing *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978)); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). Relief can be granted only when "'the trial court's logic and reasoning were improper when viewed in the light of the factual circumstances and the legal principles involved.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235,

242 (Tenn. 1999)). It is incumbent upon the trial judge to exercise a conscientious and intelligent judgment. *See State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997).

A community corrections sentence may be revoked based upon pending charges. *State v. Andrew B. Edwards*, No. W1999-01095-CCA-R3-CD, 2000 WL 705309, at *3 (Tenn. Crim. App., at Jackson, May 26, 2000), *perm. app. denied,* (Tenn. Sept. 11, 2000). However, the mere fact of an arrest or an indictment cannot be the sole basis for the revocation. *Id.* The State must provide evidence "in order to establish the . . . commission of another offense." *Id.* In other words, the State must produce evidence "to establish that the defendant committed the offense with which he has been charged." *State v. Lontrell Williams*, No. W2009-00275-CCA-R3-CD, 2009 WL 3518171, at *3 (Tenn. Crim. App., at Jackson, Oct. 30, 2009).

At the hearing, Appellant admitted that he continued to use drugs while on community corrections. Additionally, he acknowledged that he failed to comply with scheduled appointments, went "missing" for an entire month, failed to pay fines, failed to perform community service, and was arrested and pled guilty to new charges. Appellant was totally incapable of completing any of the court-ordered drug treatment programs to which he was admitted and was dismissed from a halfway house. Further, Appellant admitted that he had eleven prior probation and community corrections violations. The trial court noted that Appellant had twenty-six prior misdemeanor convictions, eight felony convictions, eleven probation violations, and two parole violations.

Appellant argues that the trial court abused its discretion in ordering him to serve his entire sentence. While it may be true that Appellant's behavior is the result of a drug addiction, the law provides that following revocation of a community corrections sentence the trial court "may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed." T.C.A. § 40-36-106(e)(4). We find ample evidence to support the trial court's discretionary decision that Appellant to serve his sentence in incarceration following the revocation of the community corrections sentence.[1]

Therefore, this issue is without merit.

---

[1] We note that the original judgment form in this case contains an agreement by Appellant that any future community corrections violation would result in him serving at least one year in custody. This provision was improper. *See State v. Crook*, 2 S.W.3d 238, 241 (Tenn. Crim. App. 1998) (holding that neither Sentencing Reform Act or Community Corrections Act allow a trial court to set a sentence prior to the revocation of a community corrections sentence that would automatically be imposed in the event that a community corrections sentence is revoked, even if a defendant agreed to the condition). Because the trial court herein ordered Appellant to serve his entire sentence, the validity of this condition is not an issue on appeal.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.


_____
JERRY L. SMITH, JUDGE